1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                    * * * * *

9   AIG FINANCIAL ADVISORS, INC., a        )
    Delaware corporation,                   )
10                                          )        03:06-CV-0497-LRH (VPC)
                           Plaintiff,       )
11                                          )
    vs.                                     )              ORDER
12                                          )
    JAMES BYONGMIN YIM and JANE DOE         )
13  YIM, husband and wife; and MILTON       )
    CHAMPION and PHYLLIS CHAMPION,          )
14  husband and wife,                       )
                                            )
15                         Defendants.      )
    _____       )
16  MILTON CHAMPION and PHYLLIS             )
    CHAMPION, husband and wife,             )
17                                          )
                          Counterclaimants.)
18                                          )
    vs.                                     )
19                                          )
    AIG FINANCIAL ADVISORS, INC., a         )
20  Delaware corporation; DOYLE BROWN, an   )
    individual; JANET WEINSTIEN, an         )
21  individual.                             )
                                            )
22                        Counterdefendants.)
                                            )
23  _____       )

24          Presently before this court is Plaintiff's, AIG Financial Advisors, motion to compel

25  arbitration and stay proceedings (#54[1]).  The Champion Defendants, Milton and Phyllis

26  Champion, have filed an opposition (#65), to which Plaintiff has replied (#68).  Also before the

27  court is the Champion Defendants' motion to dismiss for failure to name real parties in interest

28  _____

            [1] References to (#XX) refer to the court's docket.

1   or join indispensable parties (#53).  Plaintiff has filed an opposition (#64), to which the

2   Champion Defendants have replied (#69).  Finally, before this court is the Champion

3   Defendants' motion for production of documents and request for evidentiary hearing regarding

4   motion to compel arbitration (#70).  Plaintiff has filed a response to this motion (#73).

5                              **FACTS AND PROCEDURAL HISTORY**

6          The Champion Defendants met Defendant James Byongmin Yim ("Defendant Yim")

7   when he was affiliated with Morgan Stanley Dean Witter and SunAmerica Securities as an

8   investment broker.  The parties began a business relationship at that time, which ultimately led to

9   the present lawsuit.

10         In 2004, SunAmerica Securities became affiliated with Plaintiff and Defendant Yim

11  became one of Plaintiff's independent contractors.  As part of that arrangement, Defendant Yim

12  entered into an arbitration agreement with Plaintiff which provided that any claims or disputes

13  between Plaintiff and Defendant Yim would be resolved by arbitration.  As Defendant Yim

14  moved to Plaintiff's employ, the Champion Defendants brought their business as well.  The

15  Champion Defendants opened several accounts with Plaintiff.

16         Along with each account opened by the Champion Defendants, a form was signed which

17  contained an arbitration clause.[2]  This clause read as follows:

18         To the extent permitted by law, all controversies which may arise between the
           undersigned and SAS [SunAmerica Securities] or any of their affiliated
19         companies concerning any transaction arising out of or relating to any account
           maintained by the undersigned, or the construction, performance, or breach of this
20         or any other agreement between us whether entered into prior to, on, or
           subsequent to the date hereof, shall be submitted to arbitration conducted under
21         the Code of Arbitration Procedure of the National Association of Securities
           Dealers Regulation, Inc. or the arbitration panel of any other National Securities
22         Exchange on which a transaction giving rise to the claim took place, as I may
           elect.

23

24  _____

25         [2]  The court is aware of the Champion Defendants' argument that they were never
    apprised of the arbitration agreement and that at least one of their signatures may have been
26  forged to open an account.  The court does not make any factual findings at this point in the
    proceedings relating to these allegations, but merely places these facts forth by way of
27  background information.  Should the court need to discuss such allegations it will recount the
    Champion Defendants' facts at that time.
28

                                           2

1    Despite having several accounts open with Plaintiff, the Champion Defendants had more

2    money they wished to invest.  They did so through a private agreement with Defendant Yim that

3    was entered into outside of any relationship with Plaintiff.  Through that agreement, the

4    Champion Defendants wrote personal checks to Defendant Yim totaling approximately

5    $800,000.  In return, Defendant Yim was to engage in a commercial real estate transaction.

6    As is often the case in such side dealings, it appears that Defendant Yim's commercial

7    real estate transaction imploded.  As a result, Defendant Yim was indebted to the Champion

8    Defendants for a substantial sum of money.  Defendant Yim's attempt to repay that debt led

9    directly to the present suit.

10   In order to repay the debt owed to the Champion Defendants, Defendant Yim

11   misappropriated the funds of two of Plaintiff's clients.  In multiple, allegedly forged, transfer

12   orders, Defendant Yim caused approximately $564,000 to be transferred into one of the accounts

13   the Champion Defendants held with Plaintiff.  These funds were transferred from the accounts of

14   two of Plaintiff's customers without their knowledge or consent.  Once the funds reached the

15   Champion Defendants' account with Plaintiff, approximately $550,000 was transferred into the

16   Champion Defendants' private account with Wells Fargo Bank.  The Champion Defendants

17   claim they were unaware of the funds transferred until they reached the Wells Fargo Account, at

18   which time the Champion Defendants understood the transfer to be payment of the debt owed by

19   Defendant Yim.

20   When Plaintiff was notified by one of its customers that there was a problem with an

21   account, it quickly tracked down what had happened.  Plaintiff then filed an arbitration claim

22   against Defendant Yim to recover the funds he had misappropriated.  As part of that claim,

23   Plaintiff sought a constructive trust over the Champion Defendants' Wells Fargo Account to

24   ensure the funds would not be lost.  With this arbitration claim, Plaintiff filed a concurrent action

25   in this court to obtain a preliminary injunction to protect the funds transferred to the Champion

26   Defendants.  A temporary restraining order was entered and has been continued by stipulation of

27   the parties to the current date with the expectation that it would remain in effect until a

28   preliminary injunction hearing could be had.

1    In the proceedings before this court, Plaintiff's sought and obtained a default judgment

2    against Defendant Yim when he failed to respond to the complaint.  Plaintiff now seeks to

3    compel all matters to arbitration pursuant to the agreements entered into between Plaintiff and all

4    defendants.  The Champion Defendants object to sending this matter to arbitration and seek

5    dismissal of the action for failure to join necessary parties.  Further, the Champion Defendants

6    have filed a counterclaim against Plaintiff for failure to supervise Defendant Yim and failure to

7    prevent Defendant Yim from improperly transferring funds by forging the Champion

8    Defendants' signatures.

9    It also appears to the court that Plaintiff has had at lest one of the two customers who had

10   money improperly transferred from their account assign their right to sue to Plaintiff in response

11   to Plaintiff reimbursing that individual's account.  Plaintiff noted to the court that it was in the

12   process of obtaining the other account holder's rights, but to date the court has no notice whether

13   such an action was completed.

14                                        **DISCUSSION**

15   The court notes that multiple motions are pending.  However, should the court compel

16   arbitration in this matter, the remaining motions will become moot.  As such, the court will first

17   consider whether compelling arbitration is appropriate and, if it is not, will then reach the

18   remaining motions.

19        *1.    Motion to Compel Arbitration*

20   The Federal Arbitration Act provides that agreements to arbitrate disputes in commercial

21   settings "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

22   equity for the revocation of any contract."  9 U.S.C. § 2.  While this statute has been interpreted

23   according to a "liberal federal policy favoring arbitration agreements," *Howsam v. Dean Witter*

24   *Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (*quoting Moses H. Cone memorial Hospital v. Mercury*

25   *Constr. Corp.*, 460 U.S. 1, 24-25 (1983)), the courts have carefully carved out an exception

26   whereby the gateway questions of arbitrability are first determined by the courts unless the

27   parties have specifically agreed otherwise.  *Id.* (*quoting AT&T Technologies, Inc. v.*

28   *Communications Workers*, 475 U.S. 643, 649 (1986)).  One question of arbitrability generally

4

1  reserved to the courts is a determination whether "an arbitration clause in a concededly binding

2  contract applies to a particular type of controversy." *Id.* at 84.

3       The court is not convinced that, even if the Champion Defendants entered into a binding

4  arbitration agreement in relation to the account relevant to this matter, the current dispute would

5  fall within the language of the arbitration agreement.  As noted above, the arbitration agreement

6  purportedly signed by the Champion Defendants refers to arbitration all claims "arising out of or

7  relating to any account maintained by" the Champion Defendants.

8       The dispute which led to the present action arose out of Defendant Yim's improper

9  actions.  To be more specific, the true harm sought to be remedied is Defendant Yim's

10  misappropriation of funds from two of Plaintiff's customers for the purpose of paying back an

11  independent loan made to Defendant Yim by the Champion Defendants.  The actions taken by

12  Yim in removing the funds from two of Plaintiff's customers do not relate to the Champion

13  Defendants' accounts.  Nor does the ultimate controversy arise from the Champion Defendants'

14  accounts.

15       The court is aware that the funds were initially transferred to one of the accounts the

16  Champion Defendants had with Plaintiff.  However, from there the funds were moved to the

17  Champion Defendants' personal Wells Fargo Account; a transfer apparently made without the

18  Champion Defendants' knowledge.  As such, all claims against the Champion Defendants, which

19  are based on the equitable principle that improperly gained funds should be preserved to ensure

20  recovery, focus on ensuring the funds remain in the Champion Defendants' personal Wells Fargo

21  Account until they can be returned to Plaintiff.  The court sees no manner in which such a dispute

22  can be said to arise out of or relate to the account the Champion Defendants hold with Plaintiff.

23       The court recognizes that the claims against the Champion Defendants are ancillary to

24  those against Defendant Yim; recovery of the funds from the Champion Defendants is predicated

25  on demonstrating they were improperly transferred to the Champion Defendants by Defendant

26  Yim.  Further, the court is aware that the dispute between Plaintiff and Defendant Yim is subject

27  to arbitration pursuant to the independent contractor agreement between Plaintiff and Defendant

28  Yim.  However, the arbitrability of the dispute with Defendant Yim does not necessitate

1  arbitration of the ancillary matters involving the Champion Defendants.  It is a fundamental

2  principle of arbitration agreements that one cannot be forced to arbitrate a dispute they have not

3  agreed to arbitrate.  *See e.g.*, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)

4  ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot

5  precede judicial determination that the [arbitration agreement] does in fact create such a duty.

6  Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate,

7  so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.").

8  Since there is no agreement between Plaintiff and the Champion Defendants which would

9  compel arbitration of this specific dispute, the Champion Defendants cannot be forced to

10  arbitration.

11        2.      *Motion to Dismiss and Motion for Production of Documents*

12        Having determined that arbitration is not appropriate in this matter, the court now

13  considers the remaining pending motions.  The Champion Defendants have filed a motion to

14  dismiss based on the premise that Plaintiff is not the real party in interest.  The Champion

15  Defendants have also filed a motion for production of documents and a request for an evidentiary

16  hearing for the purpose of determining whether Plaintiff is the real party in interest.  Plaintiff has

17  contested the discovery motion on the ground that the matter should be compelled to arbitration -

18  a ground the court has rejected.

19        The discovery motion was filed when it became apparent that Plaintiff had been seeking

20  to gain an assignment of rights from the two customers who had been victimized by Defendant

21  Yim's actions.  The Champion Defendants recognize that a proper assignment of rights would

22  moot their motion to dismiss.  Specifically, the Champion Defendants write in the conclusion of

23  their reply brief on the motion to dismiss that, given the assignments alleged by Plaintiff,

24  Plaintiff "may now be able to satisfy diversity jurisdiction and pursue [the pending claims] in

25  federal court."  However, the Champion Defendants seek proof of the assignments if they are to

26  accept Plaintiff's statements.

27        The court agrees with the Champion Defendants' summary of the situation before the

28  court.  Given that arbitration is not appropriate, it becomes important to determine whether the

6

1  proper parties are before the court.  While the court notes that Plaintiff has provided several

2  arguments which could provide a tenable basis for concluding that they are a proper party to

3  bring the present lawsuit, there has been little to no discovery on the issue of assignment.

4      Thus, the court will deny the Champion Defendants' motion to dismiss without prejudice

5  and grant the request for production of documents relating to the assignment of claims to

6  Plaintiff.  An evidentiary hearing, however, is not needed at this time.

7                                    **CONCLUSION**

8      The court concludes that, even if a valid arbitration agreement exists between Plaintiff

9  and the Champion Defendants, the arbitration agreement provided would not cover the dispute

10 before the court.  This matter focuses on Defendant Yim's actions and his inappropriate removal

11 of funds from two of Plaintiff's customers' accounts.  While Defendant Yim transferred those

12 funds through accounts with Plaintiff in the Champion Defendants' names, the money was not

13 noticed by the Champion Defendants until it reached their personal Wells Fargo Account.  As

14 such, it cannot be said that the present dispute between Plaintiff and the Champion Defendants

15 arises out of or is related to their account with Plaintiff.  Thus, the present dispute is not

16 arbitrable under the parties' purported agreement.

17     Given that arbitration is not appropriate, the remaining pending motions become ripe for

18 decision.  However, the Champion Defendants' motion to dismiss may have become moot based

19 on actions taken by Plaintiff to gain an assignment of legal rights from the customers that were

20 affected by Defendant Yim's actions.  As such, the court need not consider the Champion

21 Defendants' motion to dismiss at this time.  Further, the court will allow limited discovery to

22 determine whether the Champion Defendants' arguments have indeed become moot.

23     It is therefore ORDERED that Plaintiff's Motion to Compel Arbitration (#54) is

24 DENIED;

25     It is further ORDERED that the Champion Defendants' Motion to Dismiss (#53) is

26 DENIED without prejudice;

27     It is further ORDERED that the Champion Defendants' Motion for Production of

28 Documents and Request for Evidentiary Hearing (#70) is GRANTED in part and DENIED in

7

1   part;

2          The Champion Defendants shall be entitled to additional discovery, limited to

3   determining whether Plaintiff has properly obtained the assignment of its customers' legal rights

4   against Defendant Yim.  However, the Champion Defendants' request for an evidentiary hearing

5   is denied without prejudice.

6          DATED this 22nd day of June, 2007.

7

8

9   _____

10  LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            8